No. 2349.—WALTON & DESLONDE v. NEW ORLEANS. JACKSON AND GREAT NORTHERN RAILROAD COMPANY.

Messrs. Walton & Deslonde, brokers, contracted with the New Orleans, Jackson and Great Northern Railroad Company to cause to be released from the custody of the United States authorities, and to sell or procure a purchaser for at a given price, a certain piece of property on Camp street, for which they were to receive five per cent. commission, or two and a half per cent. commission if they failed to procure a purchaser. They succeeded in getting the property released, for which they were paid two and one-half per cent. commission as agreed upon. Subsequently other brokers were employed, who negotiated a sale of the property, for which they were paid a commission. Walton & Deslonde now bring suit for the additional two and one-half per .cent. commission on the gross sale, under their contract, alleging that the sale was taken out of their hands without their consent. The evidence shows that after several months delay, they failed to procure a purchaser on the terms and conditions prescribed by the company.

Held—That the first brokers, Walton & Deslonde, not having complied with the terms and conditions of the latter part of their obligation, by effecting a sale of the property or procuring a purchaser at the price and on the terms and conditions agreed upon, they are not entitled to recover the commissions therefor.

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J.* *Clarke, Bayne & Renshaw,* for plaintiffs and appellees. *Campbell, Spofford and Campbell and L. E. Simonds,* for defendant and appellant.

WYLY, J. The plaintiffs allege that the New Orleans, Jackson and Great Northern Railroad Company placed in their hands for sale a house and premises on Camp street, opposite Lafayette Square; that they " developed a purchaser," who was willing to pay $70,000 for said property; that the name of the proposed purchaser, viz: the Odd Fellows' Hall Association, was communicated to said company; that subsequently and while the said property was in their hands " for sale under agreement to pay them as brokers and agents two and a half per cent. commissions on the same, said property was, without any notice to them, sold, through other agents or brokers, to the same purchaser, viz : the Odd Fellows' Hall Association, for the same or less price than was offered through them, thus availing of the labor and skill of petitioners without compensation." On these allegations they prayed judgment for $1750, being two and a half per cent. commissions on the price of said property, to wit: $70,000.

The answer is a general denial.

The court gave judgment for half the amount demanded by the plaintiffs, viz: $875, and the defendant has appealed.

It appears that in May, 1863, the New Orleans, Jackson and Great Northern Railroad Company employed the plaintiffs to procure the release of the property described in the petition, which was then in possession of the United States military authorities, and to sell the same "for the price of seventy-five thousand dollars or more."

In the contract we find the following stipulation : "And it is further agreed that Messrs. J. B. Walton & Deslonde shall at once proceed to obtain the release of the property from the United States authorities, and its restoration to its rightful owners, and to sell the same, for which services they are to be paid five per cent. on the gross amount of the sale as full compensation."

"In the event of the property not being sold, Messrs. J. B. Walton & Deslonde are to be reimbursed all costs for advertising, etc., and for obtaining the release of the property, they are to be paid a liberal commission, said compensation to be two and one-half per cent. on $70,000, to include all expenses."

It appears that after much trouble the plaintiffs got the property released from the United States authorities, and being unable to get a a purchaser for the price fixed in the contract, to wit: "$75,000 or more," they collected two and a half per cent. on $70,000, the amount of compensation fixed in the contract to cover all expenses for releasing the property in the event of the sale not being effected.

This settlement, we are satisfied, terminated the contract of the fourth of May, 1866, to which we have referred. How the plaintiffs can now claim two and a half per cent. commissions on this contract we can not imagine.

Under that instrument they undoubtedly had the obligation of the defendant to pay them five per cent. commissions "on the gross amount of the sale," provided they obtained the release and sold the property "for seventy-five thousand dollars or more," and in event of failure to effect the sale they were to have two and a half per cent. on $70,000, as compensation for obtaining the release of the property and all expenses. They acknowledge that they have been paid according to contract for obtaining the release of the property, and they do not pretend that they have ever procured a purchaser for the defendant, who was willing to pay the $75,000 for the property. It is not shown that this contract was ever amended so as to make it a perpetual one, and so as to preclude the owners from ever afterwards selling the property for a price less than $75,000, without incurring the obligation to pay the plaintiffs two and a half per cent. on the amount of the price. It is admitted that the property was sold to the Odd Fellows' Hall Association in July, 1867, and the evidence shows

that this sale was effected through other brokers, without the "labor and skill of the petitioners."

It is true the plaintiffs wrote to the President of the New Orleans, Jackson and Great Northern Railroad Company in March, 1867, proposing a purchaser at $70,000, and this offer was rejected by him; and subsequently, to wit: on the tenth of May, 1867, the president wrote the plaintiffs the following letter:

"*Dear Sirs*—The Executive Committee of the Board of Directors of this company having reconsidered their action relative to the sale of the building on Camp street, opposite Lafayette Square, have concluded to dispose of it for $75,000 cash, and if the parties who made you an offer some time ago are willing to pay the amount on these terms, we will give them the preference," etc.

It is not pretended that the plaintiffs procured a purchaser at the price stipulated in this letter.

Now, because the defendant several months afterwards concluded to sell its property for a less sum and through other agents, we do not see that a cause of action thereby arose in behalf of the plaintiffs.

It is not shown that the sale of the property by other brokers, of which the plaintiffs complain, was consummated by their labor or skill, and from the evidence we see no merit in the demand of the petitioners.

It is therefore ordered that the judgment appealed from be annulled, and it is ordered that there be judgment for the defendant, the plaintiffs paying costs of both courts.

Rehearing refused.